IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HASAN BAYADI, | ) | Civil Action No. 7:16cv00003 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD CLARKE, *et al.*, | ) | By: Norman K. Moon |
|     Defendants. | ) | United States District Judge |

Hasan Bayadi, a Virginia inmate proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 naming numerous staff of the Virginia Department of Corrections ("VDOC") and Wallens Ridge State Prison ("WRSP") as defendants in both individual and official capacities. Bayadi argues that how correctional officers serve food violates the First and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, the Virginia Constitution, and various public and private correctional standards. Bayadi seeks declaratory relief, damages, and a permanent injunction. The parties filed motions for summary judgment, and this matter is ripe for review.[1] Upon consideration of this action, I will grant in part and deny in part defendants' motion for summary judgment, deny in part and dismiss without prejudice in part Bayadi's motion for summary judgment, dismiss the Virginia Constitution claim without prejudice, and order briefing and mediation for the remaining First Amendment and RLUIPA claims.

---

[1] Bayadi also filed a reply to the correctional defendants' answer that I had not authorized in accordance with Federal Rules of Civil Procedure 7(a)(7) and 12(a)(1)(C). Consequently, that reply does not constitute a pleading that is allowed under the Federal Rules of Civil Procedure or afforded liberal construction, and I do not consider it. *See* Fed. R. Civ. P. 7(a); *Jourdan v. Jabe*, 951 F.2d 108, 109-10 (6th Cir. 1991) (holding that a *pro se* litigant is not entitled to special consideration to excuse a failure to follow a straightforward procedural requirement that a lay person can comprehend as easily as a lawyer); *see also Sherrill v. Holder*, No. 12-00489, 2013 U.S. Dist. LEXIS 190373, at *1, 2013 WL 11316921, at *1 (D. Az. June 25, 2013) ("This Court did not grant Plaintiff leave to file a reply to Defendant's Answer. Further, the Court does not find any basis to permit Plaintiff to file a reply to the Defendant's Answer in this case. As such, Plaintiff's Response to Defendant's Answer is stricken from the record."). Nonetheless, Bayadi is not prejudiced because "[i]f a responsive pleading is not required, an allegation is considered denied or avoided." Fed. R. Civ. P. 8(b)(6).

**I.**

Bayadi, a Muslim, alleges in the verified complaint that defendant correctional officers Cooke, Rutherford, Caudill, Huff, Sumpter, Chick, and Lawson (the "officer defendants") use the same gloved hands and use the same food delivery cart to transport both pork-free Common Fare trays and "pork-contaminated" regular trays. Common Fare is offered to inmates who have specialized and religious dietary needs, and it is designed to meet all halal and Kosher dietary restrictions, including being free of pork products.

Defendants claim that Food Service staff store, prepare, serve, and clean the Common Fare food, trays, and kitchen in compliance with halal and Kosher requirements. Per policy, all Common Fare food is prepared in a designated Common Fare area; utensils for Common Fare foods are stored, handled, used, and cleaned separately from utensils for non-Common Fare foods; Common Fare foods are prepared and placed in serving trays designated for only Common Fare foods; and reusable serving trays, tray covers, utensils, and cups for Common Fare foods are washed and stored separately from similar non-Common Fare items.

When inmates are locked in their cells for meals, the food trays are transported in carts. The hot Common Fare trays are placed on a different cart than hot regular trays. However, the cold Common Fare trays are placed on the same cart as cold regular trays. Defendants say that staff keeps the cold Common Fare and non-Common Fare trays separate on the cart based on the trays' different colors. Correctional officers collect the dirty Common Fare trays and regular meal trays, place the trays back onto the same cart from which they came, and take them to the kitchen where the trays are removed, cleaned, and sanitized. Defendants do not note whether the dirty trays are comingled or whether the cart is sanitized of pork residue before the next delivery of Common Fare meals.

2

Bayadi explains that, as a Muslim, he has a sincerely-held religious belief that his food, utensils, and tray must not contact any surface that has contacted something "contaminated" by pork. Thus, Bayadi argues that his Common Fare meal cannot be transported in the same unsanitary cart that has held "pork-contaminated" regular trays. Bayadi further argues that the same officer who handles "pork-contaminated" regular trays cannot handle his Common Fare trays. Consequently, Bayadi argues that the officer defendants violate the First Amendment, RLUIPA, and the Virginia Constitution by serving him "pork-contaminated" Common Fare trays.

Bayadi further argues that the remaining defendants violated those same rights in addition to violating various state and national policies. For example, administrative and supervisory defendants Clarke, Fleming, Anderson, Stallard, King, McCray, and Porchie are allegedly deliberately indifferent to the officer defendants' violations of federal laws, state laws, VDOC directives and policies, Board of Corrections regulations and policies, and American Correctional Association standards. Bayadi also faults these administrative and supervisory defendants for allowing the officer defendants to handle food trays despite not being designated as VDOC "Food Service Staff." Bayadi further faults defendant Ravizee, who is the facility grievance coordinator, for rejecting a regular grievance as repetitive. Lastly, Bayadi generally asserts a violation of the Equal Protection Clause of the Fourteenth Amendment.

In addition to a declaration and damages, Bayadi seeks a permanent injunction to require food service supervisors and staff, and not correctional officers, to serve Common Fare trays.

3

Bayadi also wants an injunction to stop WRSP grievances from being dismissing to cover up "illegal acts."[2]

## II.

The parties filed motions for summary judgment. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). If, however, the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff may not amend a complaint through argument in a brief opposing summary judgment. *Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009).

Defendants argue that they are entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability," and it is therefore "effectively lost if

---

[2] Bayadi does not parse out which type of relief is asserted specifically against any one defendant for any one claim. Consequently, I liberally construe all of the claims as seeking all the remedies sought against all the defendants in both individual and official capacities. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

4

a case is erroneously permitted to go to trial." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Indeed, the "driving force" behind the doctrine is the "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery."[3] *Id.* (alteration in original). Even when a plaintiff's constitutional rights have been violated, qualified immunity applies to bar the claim if, based on the facts presented, "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the . . . officers possessed." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *see In re Allen*, 106 F.3d 582, 593 (4th Cir. 1997) ("[A]n official may claim qualified immunity as long as his actions are not clearly established to be beyond the boundaries of his discretionary authority."). Clearly established law relevant to this case refers to decisions of the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia. *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999).

### III.

Defendants are entitled to summary judgment as to damages sought under RLUIPA and against them in their official capacities. RLUIPA does not authorize damages against a public official under the Spending Clause of the United States Constitution.[4] *See Sossamon v. Texas*, 563 U.S. 277, 282 n.1, 293 (2011) (prohibiting damages claims against state officials in their official capacity under the Spending Clause); *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir.

---

[3] I had already granted defendants' motion for a protective order to stay discovery until qualified immunity is resolved.

[4] I consider the RLUIPA claim only pursuant to the Spending Clause because Bayadi does not argue that RLUIPA applies under the Constitution's Commerce Clause. *See, e.g.*, *Washington v. Gonyea*, 731 F.3d 143, 146 (2d Cir. 2013) (declining to consider "whether RLUIPA authorizes individual-capacity suits under the imprimatur of the commerce clause" where plaintiff "pled no facts" pertaining to interstate commerce); *compare* 42 U.S.C. § 2000cc-1(b)(1) (Spending Clause provision), *with id.* § 2000cc-1(b)(2) (Commerce Clause provision).

5

2009) (same for individual capacity). The Eleventh Amendment shields the Commonwealth of Virginia, vis-a-vis the defendants in their official capacities, from damages. *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002). Accordingly, Bayadi cannot recover damages against defendants in their official capacities or under RLUIPA.

## IV.

Defendants are entitled to summary judgment on the equal protection claim. The Equal Protection Clause requires that persons similarly situated be treated alike. *Plyer v. Doe*, 457 U.S. 202, 216 (1982). To state such a claim, a plaintiff must demonstrate that he has been treated differently from others who are similarly situated and that the unequal treatment was the result of intentional discrimination. *Morrisson v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If the plaintiff does not make this threshold showing, a court need not determine whether the alleged disparate treatment was justified under the appropriate level of scrutiny. *Ephraim v. Angelone*, 313 F. Supp. 2d 569, 573-74 (E.D. Va. 2003); *see also Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 819 (4th Cir. 1995) (stating that a plaintiff must show more than the fact that "a benefit was denied to one person while conferred on another" to prove that he was intentionally or purposefully discriminated against).

The verified complaint does not describe how Bayadi is treated differently than any other inmate, and instead, his claims imply that inmates receiving Common Fare trays at WRSP experience the same alleged deprivation. Furthermore, the verified complaint's reliance on labels and conclusions is insufficient to state a claim. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, all defendants are entitled to summary judgment for the equal protection claim.

6

# V.
## A.

The defendants are entitled to summary judgment on the claim about the officer defendants not being deemed VDOC "Food Service Staff" or handling the trays in violation of various public and private regulations, policies, or procedures. A violation of such codes does not state a *per se* violation of federal law actionable via § 1983. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 752-55 (1979); *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). Accordingly, defendants are entitled to summary judgment on these particular claims.

## B.

The officer defendants are not entitled to qualified immunity or summary judgment for the First Amendment claims about contaminated Common Fare trays because Bayadi's allegations state violations of clearly-established law. For similar reasons, Clarke and Fleming are not entitled to summary judgment for the RLUIPA claim against them in their official capacities. Inasmuch as defendants acknowledge they have not yet addressed their different burdens required under the First Amendment and RLUIPA, I will order additional briefing on these claims.

An inmate's right to religious exercise must be balanced with prisons' institutional needs of security, discipline, and general administration. *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-49 (1987). However, RLUIPA affords heightened protection to a prisoner's religious exercise, whereas the First Amendment is more deferential to prison official's decisions impacting religious exercise.

7

RLUIPA prohibits government officials from imposing a substantial burden on the religious exercise of an inmate unless the government demonstrates that the burden furthers a compelling governmental interest and is the least restrictive means of furthering that interest.[5] 42 U.S.C. § 2000cc-1(a). In contrast, a correctional regulation or management decision that substantially burdens an inmate's First Amendment right is valid if it is reasonably related to legitimate penological interests. *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

*Id.* at 200 (citing *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)); s*ee Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (recognizing the prisoner has the burden to disprove the validity of a prison regulation pursuant to the *Turner* analysis). A "substantial burden" on religious exercise occurs under the First Amendment or RLUIPA if it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs, or . . . forces a person to choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand."[6] *Lovelace*, 472 F.3d at

---

[5] "Government" includes the defendants, who work for the VDOC. 42 U.S.C. § 2000cc-5(4)(A).

[6] I assume for purposes of this opinion that Bayadi's dietary needs are a personal practice that is both sincerely held and rooted in religious belief. *See, e.g.*, *Cutter*, 544 U.S. at 725; *see also* 42 U.S.C. § 2000cc-5(7) (defining "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief").

8

187; *see, e.g.*, *Patel v. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008) ("When the significance of a religious belief is not at issue, the same definition of 'substantial burden' applies under the Free Exercise Clause, RFRA, and RLUIPA.").

Bayadi's allegations satisfy the questions of sincere religious need and substantial burden inquiries for the First Amendment and RLUIPA. Consequently, Bayadi has met his burden under RLUIPA, and the burden shifts to defendants to establish a compelling governmental interest that is the least restrictive means of furthering that interest. However, defendants have not yet responded to that inquiry, and I will order another motion for summary judgment as to the RLUIPA claim.

In addition to describing a sincere religious need and a substantial burden for the First Amendment claim, Bayadi sufficiently addresses the *Turner* factors.[7] *See, e.g.*, *Overton*, 539 U.S. at 132 (discussing a plaintiff's burden to disprove the reasonableness of the regulation under the *Turner* factors). In sum, Bayadi shows that the reasonableness of having the same correctional officers serve both Common Fare and non-Common Fare trays from the same unsanitary cart is circumspect.

The alleged violations of Bayadi's religious rights occurred in 2015. In 2014, the Court of Appeals for the Fourth Circuit had reaffirmed that an inmate has a "clearly established . . . right to a diet consistent with . . . his religious scruples[.]" *Wall v. Wade*, 741 F.3d 492, 502 (4th Cir. 2014) (citing *Lovelace*, 472 F.3d at 199). "While it may be true that [the Court of Appeals] ha[s] never specifically evaluated [the degree of contamination a Common Fare tray may have with pork products], this argument overlooks the broader right at issue: that inmates are entitled to religious dietary accommodations absent a legitimate reason to the contrary." *Id.* The clearly

---

[7] I note that the *Turner* factors apply to the First Amendment claim only, not the RLUIPA claim.

9

established prong of qualified immunity "includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Id.* (quoting *Pritchett v. Alford*, 973 F.2d 307, 314 (4th Cir. 1992)). Consequently, it had been clearly established that a reasonable official in defendants' positions could not serve to a Muslim inmate foods on trays "contaminated" by pork.

Accordingly, defendants' motion for summary judgment is denied in part as to the First Amendment and RLUIPA claims. Defendants will file another summary judgment motion relevant to these claims in accordance with Standing Order 2013-6. Bayadi's motion for summary judgment is dismissed without prejudice as to the First Amendment and RLUIPA claims as these claims require further briefing from defendants. He may raise his arguments again in response to defendants' forthcoming motion for summary judgment.

## VI.

Because the First Amendment and RLUIPA claims implicate Clarke and Fleming in their official capacities, they shall remain in the case in their official capacities. However, Clarke, Fleming, Anderson, Stallard, Ravizee, King, McCray, and Porchie are entitled to summary judgment in all other respects.

Bayadi's allegation against Ravizee about access to grievances does not state a claim actionable via § 1983 because prisoners do not have a constitutional right to participate in grievance proceedings. *Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994). Bayadi fails to describe the administrative and supervisory defendants' personal acts or omissions that led to an alleged deprivation of federal rights, and "[a] superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing

10

*Brooks v. Beard*, 167 F. App'x 923, 925 (3rd Cir. 2006)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting a plaintiff cannot rely on labels and conclusions to state a claim).

Moreover, Bayadi cannot merely rely on negligence or *respondeat superior* to assert liability against the administrative and supervisory defendants. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 663 n.7 (1978). To establish supervisory liability under § 1983, a plaintiff must show that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw*, 13 F.3d at 799. To satisfy the requirements of the first element, a plaintiff must establish: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984). Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id.* at 373-74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373.

Other than reliance on labels and conclusions, the verified complaint does not describe Bayadi's personal knowledge of the administrative and supervisory defendants' deliberate indifference. While Bayadi asserts that he filed a regular grievance about contaminated

11

Common Fare trays, the record shows it never reached Warden Fleming for review. Furthermore, the allegation that subordinates violated various public and private correctional policies and procedures does not state a *per se* violation of federal law actionable via § 1983. *See, e.g.*, *Caceres*, 440 U.S. at 752-55; *Monell*, 436 U.S. at 663 n.7; *Riccio*, 907 F.2d at 1469. Accordingly, Clarke, Fleming, Anderson, Stallard, Ravizee, King, McCray, and Porchie are entitled to summary judgment in this respect.

However, defendants Clarke, as the Director of the VDOC, and Fleming, as the Warden of WRSP, will remain in the case in their official capacities. "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). To prevail on the merits of an official-capacity suit, "the entity's policy or custom must have played a part in the violation of federal law." *Id.*; *see Brown v. Mitchell*, 327 F. Supp. 2d 615, 629 (E.D. Va. 2004) (noting that a defendant in an official-capacity suit must have "an official policy or custom which causes a deprivation of the plaintiff's constitutional or statutory rights").

Bayadi seeks equitable relief to modify the VDOC or WRSP procedures about food service. The record shows that the VDOC and/or WRSP may have a policy or custom allowing the same correctional officers and the same unsanitary carts to transport both Common Fare and non-Common Fare trays. Because equitable relief remains a viable remedy, these two defendants shall remain in the case in their official capacities.

12

## VII.

I decline to exercise supplemental jurisdiction over Bayadi's claim that defendants have violated his religious rights afforded by Article 1, Section 16 of the Virginia Constitution.[8] The Supreme Court of Virginia has explained that provisions of the Virginia Constitution do not provide an independent basis for a private right of action unless they are self-executing. *See, e.g.*, *Robb v. Shockoe Slip Found.*, 228 Va. 678, 681 (1985). Bayadi does not establish that Article 1, Section 16 of the Virginia Constitution has been held to be self-executing, and his assertion of this state-law claim relies on labels and conclusions. *See Iqbal*, 556 U.S. at 676 (noting labels and conclusions are not sufficient to state a claim). Questions of state constitutional law are best answered by state courts, rather than by the federal judiciary. *See, e.g.*, *Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 84-85 (1975); *Reetz v. Bozanich*, 397 U.S. 82, 85 (1970). "[N]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). Accordingly, this state law claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

---

[8] This section reads:
> That religion or the duty which we owe to our Creator, and the manner of discharging it, can be directed only by reason and conviction, not by force or violence; and, therefore, all men are equally entitled to the free exercise of religion, according to the dictates of conscience; and that it is the mutual duty of all to practice Christian forbearance, love, and charity towards each other. No man shall be compelled to frequent or support any religious worship, place, or ministry whatsoever, nor shall be enforced, restrained, molested, or burthened [sic] in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but all men shall be free to profess and by argument to maintain their opinions in matters of religion, and the same shall in nowise diminish, enlarge, or affect their civil capacities. And the General Assembly shall not prescribe any religious test whatever, or confer any peculiar privileges or advantages on any sect or denomination, or pass any law requiring or authorizing any religious society, or the people of any district within this Commonwealth, to levy on themselves or others, any tax for the erection or repair of any house of public worship, or for the support of any church or ministry; but it shall be left free to every person to select his religious instructor, and to make for his support such private contract as he shall please.

13

## VIII.

For the reasons stated, I will dismiss the state law claim without prejudice pursuant to 28 U.S.C. § 1367(c). I will deny defendants' motion for summary judgment as to Clarke and Fleming in their official capacities and as to the First Amendment and RLUIPA claims against the officer defendants in their individual capacities. However, I will grant it in all other respects.

Thus, the claims presently surviving summary judgment are: the First Amendment and RLUIPA claims seeking injunctive and/or declaratory relief against the officer defendants and against Clarke and Fleming in their official capacities, and; the First Amendment claim for damages against the officer defendants and against Clarke and Fleming in the personal capacities. I will direct the remaining defendants to file within sixty days a motion for summary judgment addressing the remaining claims.

I will dismiss Bayadi's motion for summary judgment without prejudice as to his arguments about defendants' burden under the First Amendment and RLUIPA because those issues will be decided only after defendants file their next motion for summary judgment. However, I will deny Bayadi's motion for summary judgment as to its remaining arguments. Also, I will refer this matter to mediation.

**ENTER**: This <u>22nd</u> day of March, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

14